**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEANO GOLDEN, LATRICE REED,** | ) | |
| **and PHYLON MOORE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 10 C 7673** |
| | ) | |
| **WORLD SECURITY BUREAU,** | ) | |
| **INC., GLENDON GROVES,** | ) | |
| **and IBRIHIM KISWANI,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

This case went to trial before a jury on the claims of Latrice Reed against World

Security Bureau, Inc. (WSB), Ibrihim Kiswani, and Glendon Groves for race

discrimination and retaliation under 42 U.S.C. § 1981.[1] The jury found in favor of Reed

against WSB and Groves on her claim of a racially hostile work environment but in favor

of Kiswani on that claim, and it found in favor of all defendants on the retaliation claim.

The jury awarded Reed $20,000 in compensatory damages against WSB and Groves,

$50,000 in punitive damages against WSB, and $5,000 in punitive damages against

Groves. Defendants have moved for entry of judgment as a matter of law (JMOL) or for

---

[1] Prior to trial, the Court granted summary judgment in defendants' favor on the claims of
plaintiffs Deano Golden and Phylon Moore. The claims of a fourth plaintiff, Victor Hernandez,
were dismissed for want of prosecution in September 2011.

a new trial on various grounds. For the reasons stated below, the Court denies the
motion.

**JMOL motion**

A court may grant judgment as a matter of law when "a reasonable jury would not
have a legally sufficient evidentiary basis to find for the [nonmoving] party." Fed. R. Civ.
P. 50(a)(1); *see Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 300–01 (7th Cir.
2009). The Court "do[es] not weigh evidence or assess the credibility of witnesses.
Instead, [it] draw[s] all reasonable inferences in favor of the nonmoving party." *Thomas*,
604 F.3d at 300–01 (citations omitted).

**1.     JMOL – liability of WSB**

To prevail on her hostile work environment claim, Reed was required to prove,
among other things, that she subjectively believed the conduct in question to be
harassing. WSB argues that there was insufficient evidence for the jury to find that
Reed met this requirement. The Court disagrees. Reed testified that she found the
conduct at issue offensive and that it upset her, and the jury was entitled to believe her
testimony. The testimony was sufficient to meet Reed's burden.

WSB's primary contention is that Reed did not prove the elements needed to
establish employer liability (that is, WSB's liability) for the hostile work environment. In
a case of co-worker harassment, an employer is liable under a negligence standard
when it knows or should know that wrongdoing is afoot and fails to take steps
reasonably designed to stop it. *See, e.g., Erickson v. Wisconsin Dep't of Corrs.*, 469
F.3d 600, 607 (7th Cir. 2006). In addition, "[a]n employer is not liable for co-employee
racial harassment when a mechanism to report the harassment exists, but the victim

2

fails to utilize it." *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 549 (7th Cir. 2011).

WSB argues that there was insufficient evidence for a reasonable jury to find that Reed took reasonable steps to apprise WSB of the alleged harassing conduct. The Court disagrees. As WSB acknowledges, its employee manual stated that an employee could report harassment to "Human Resources directly, or if the employee prefers, the employee may report the complaint to his or her manager or supervisor (or any member of management)." Pl.'s Opp. to Defs.' Mot., Ex. 2 at 5. There was evidence sufficient for a jury to find that Reed reported the alleged harassment to two supervisors (Herrera and Henley) and thus complied with WSB's policy. In short, a jury reasonably could find that Reed utilized WSB's reporting mechanism and that this put WSB on notice of the alleged harassment. *Parkins v. Civil Constructions of Illinois, Inc.*, 163 F.3d 1027 (7th Cir. 1998), cited by WSB, is distinguishable, because unlike in the present case the plaintiff there did not report the harassment to a supervisor authorized in the employer's policy to receive such complaints.

WSB next contends that Reed failed to show that it did not take adequate corrective action following her complaints. WSB's first argument in this regard is that Reed's claim required her to prove that Kiswani failed to take adequate corrective action and that the jury's verdict in favor of Kiswani undermines her claim. This argument is a non-starter as a basis for entry of JMOL in favor of WSB. It amounts to an argument that the jury's verdict against WSB is inconsistent with its verdict in favor of Kiswani. But,

> [a] court cannot grant [judgment as a matter of law] in order to harmonize jury verdicts that appear to point in opposite directions. *See, e.g., Mosley v. Wilson*, 102 F.3d 85, 90 (3d Cir. 1996). If it appears that the jury returned inconsistent verdicts, the Court must first do its best to reconcile

the verdicts on some theory consistent with the evidence. *Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108, 119 (1963); *Cantellops v. Alvaro-Chapel*, 234 F.3d 741, 744 (1st Cir. 2000); *Ward v. City of San Jose*, 967 F.2d 280, 286 (9th Cir. 1992). If we cannot do so, however, it is improper to take the verdict favorable to one party and assume it is the "right" one, as [defendant] has asked us to do. *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 677 (7th Cir. 1985). Rather, the appropriate remedy is a new trial on all claims. *Gordon v. Degelmann*, 29 F.3d 295, 298-99 (7th Cir. 1994).

*Deloughery v. City of Chicago*, No. 02 C 2722, 2004 WL 1125897, at *2 (N.D. Ill. May 20, 2004) (Kennelly, J.) (internal quotation marks omitted), *aff'd*, 422 F.3d 611 (7th Cir. 2005). In short, if the verdicts as to WSB and Kiswani could not be reconciled, then the Court would be required to grant a new trial on both claims, not enter JMOL for WSB while leaving intact the verdict in Kiswani's favor. Thus the claimed inconsistency is not a basis to grant JMOL for WSB.

WSB has not sought a new trial based on the claimed inconsistency, and thus it has forfeited that point. But even if a request for a new trial based on the claimed inconsistency were properly before the Court, the Court would deny the request. The evidence was sufficient to establish the requirements of employer liability completely aside from any inaction or negligent action by Kiswani.[2] *See generally Lambert v. Peri Formworks Sys., Inc.*, ___ F.3d ___, No. 12-2404, 2013 WL 3814331, at *2-4 (7th Cir. July 24, 2013). Both Henley and Herrera testified that they were under an obligation to report up the chain of command any complaint of discrimination or harassment that they received. A jury reasonably could infer from this, along with Reed's testimony that she complained to supervisors, that they did in fact report her complaint further up the chain. Yet Groves remained in his same position for months after supervisory personnel had information from Reed and others regarding his racially harassing conduct. Some of the

---

[2] In short, the verdicts against WSB but in favor of Kiswani can be reconciled.

harassment of Reed took place during this period.  The fact that Groves was later relocated does not absolve WSB of responsibility for its inaction during the earlier period.

**2.      JMOL – liability of Groves**

Groves challenges the sufficiency of the evidence supporting the verdict against him on Reed's section 1981 claim.  At trial, Groves did not object to the jury instruction describing what Reed had to prove on this claim, nor has he requested a new trial on the ground the instruction was erroneous.  In short, Groves has waived or forfeited any challenge to the instruction.  In defendants' reply brief, Groves appears to advocate a standard for supervisor liability that is at variance with the instruction given to the jury, to which defendants did not object at trial.  This argument comes too late in the day.

The Court therefore confines its consideration to whether the evidence, taken in the light most favorable to Reed, permitted a reasonable jury to find the following elements on which the jury was instructed:

> 1.   Mr. Groves was a supervisor with the authority to affect the terms and conditions of Ms. Reed's employment, in other words, that he had the authority to hire, fire, promote, transfer, or discipline Ms. Reed or make recommendations in that regard.
>
> 2.   Mr. Groves subjected Ms. Reed to a hostile or abusive working environment.
>
> 3.   The conduct was unwelcome.
>
> 4.   The conduct occurred because of Ms. Reed's race.
>
> 5.   The conduct was sufficiently severe or pervasive that a reasonable person in Ms. Reed's position would have found her work environment to be hostile or abusive.
>
> 6.   Ms. Reed believed at the time that the conduct made her work environment hostile or abusive.

See Dkt. Entry 215 at 11.  In his JMOL motion, Groves focuses on the first element, arguing that there was insufficient evidence of his supervisory role to permit a reasonable jury to find against him.

In defending the jury's verdict, Reed says that the evidence shows that Groves had the following authority and responsibilities:

> delegating tasks to employees, such as Latrice Reed; Latrice was also required to submit her time-sheet to Groves for review; [Groves] had the authority to warn employees if they were being tardy too often; had the authority to hand-pick an officer to work as a Lead; responsible for reviewing security officer's time sheets; had the authority to complete employee warning reports, had authority to warn employees that future discipline [sic], authority to recommend an employee be sent home for an infraction, and authority to issue Latrice an employee warning.

Pl.'s Opp. to Defs.' Mot. at 5.  This is a fair characterization of the evidence.  Among other things, Groves, a "site supervisor," routinely issued warnings to employees on a form that made it clear that the warning put the employee on notice of a violation of the company's rules and that further violations might result in "consequences" (future disciplinary action), including suspension.  *See* Pl.'s Ex. 24.  On some of these warnings, Groves stated in writing that "failure to improve" would result in more severe sanctions, including suspension.  *See id.*  The evidence, taken in the light most favorable to Reed, indicates that Groves was able to do this on his own, without getting approval from higher-ups.  To be sure, there was no evidence that Groves could make hiring, firing, promotion, or transfer decisions.  But the evidence, viewed in the light most favorable to Reed, was sufficient to permit a jury to find that he was able to make disciplinary decisions – issuance of the warnings just referenced – and could recommend further discipline, as shown by the "consequences" section of the warning

forms. In sum, a reasonable jury could find, based on the evidence, that Groves satisfied the criteria set forth in the jury instruction describing the first element of liability under section 1981.

In addition, John Henley, a field supervisor, testified at trial that at WSB, site supervisors were authorized to recommend discipline. Even more to the point, Reed introduced deposition testimony by Henley to the effect that a site supervisor could actually impose some forms of discipline.

There was conflicting testimony about these issues, but resolving those conflicts was the jury's function at trial, not the Court's function in addressing a post-trial motion. A reasonable jury could find in Reed's favor on her claim against Groves.

3.      **JMOL – punitive damages**

WSB contends that there was insufficient evidence for the jury to assess punitive damages against the company. The Court disagrees. The jury reasonably could find, based on evidence discussed above, that WSB was aware of Groves' racially harassing activity via reporting by supervisory personnel but took no action.

The jury was instructed, without objection by defendants, that to recover punitive damages from WSB, Reed had to prove by a preponderance of the evidence "that one or more managerial employees of World Security acted in reckless disregard of Ms. Reed's rights." *See* Dkt. Entry 215 at 15. The jury was told that "[a] person is considered to have acted in reckless disregard of Ms. Reed's rights if the person acted with knowledge that his actions may violate the law." *Id.* at 16. The instructions also stated that the jury "should not award Ms. Reed punitive damages against [WSB] . . . if [WSB] proves by a preponderance of the evidence that it made a good faith effort to

implement an anti-discrimination policy." *Id.* at 15.

The instructions told the jury that it was undisputed that Kiswani was a managerial employee and that to determine whether Groves was a managerial employee, the jury "should consider the kind of authority he had, the amount of discretion he had in carrying out his job duties, and the manner in which he carried them out." *Id.* at 15. But although the instructions offered Kiswani and Groves as two possible managerial employees, it did not confine the jury to these two examples. The jury reasonably could have found that Herrera and/or Henley were managerial employees under the same criteria that the instruction cited as applying to Groves.

WSB says that the verdict in Kiswani's favor establishes that Henley and Herrera never reported to Kiswani what they had learned about Groves. Putting aside whether that is the most likely interpretation of the verdict, as well as the "inconsistent verdicts" discussion earlier in this decision, a jury that found that Henley or Herrera were managerial employees (as the jury reasonably could do) could have found WSB liable for punitive damages even if it completely absolved Kiswani.

WSB also argues that the evidence established that it satisfied the "good faith effort" defense quoted earlier. But a jury reasonably could find, based on the evidence, that the company's reporting and remediation policy was a dead letter, at least for the extended period in which nothing was done about Groves after complaints were made about his conduct.

For these reasons, the Court declines to overturn the punitive damage award against WSB.

**Motion for new trial**

Defendants seek a new trial on the ground that the verdict against them was against the manifest weight of the evidence. A court may set aside a verdict on this basis "only if no rational jury could have rendered the verdict. The . . . court must view the evidence in the light most favorable to the prevailing party, leaving issues of credibility and weight of the evidence to the jury." *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 444-45 (7th Cir. 2009).

Given this standard, defendants are not entitled to a new trial. A jury certainly could have found in their favor on all claims, but a rational jury unquestionably could have rendered a verdict in Reed's favor on the claims on which she prevailed. The Court adopts its earlier discussion of the evidence on these points.

Defendants' remaining grounds for seeking a new trial all involve challenges to rulings admitting or excluding evidence. A new trial is warranted on such grounds only if the Court's ruling was erroneous and the error had "a substantial or injurious effect or influence on the determination of a jury and the result is inconsistent with substantial justice." *Id.* at 440.

Defendants argue that the Court erred in admitting the testimony of Antonio Scott and Phylon Moore regarding complaints they made about racist remarks by Groves. The Court disagrees. The evidence was admissible to show that WSB was on notice of Groves' racially harassing conduct.

Defendants also argue that the Court erred in declining to allow them to call at trial certain witnesses whom defendants did not identify in their Rule 26(a)(1) disclosures or amended disclosures or in their answers to interrogatories. The

exclusion of these witnesses was appropriate under Rule 37(c)(1), because the nondisclosure was neither justified nor harmless. Defendants offer no justification (such as belatedly learning of the witnesses' existence) for their non-disclosure. On the issue of harmlessness, the fact that these persons – who were quite numerous – were mentioned during a deposition did nothing to put Reed on notice that defendants intended to use them as witnesses at trial. Indeed, even after that deposition, it appears that defendants amended their Rule 26(a)(1) disclosures but still did not identify these witnesses. Based on these events, Reed had no reason to believe that any of these witnesses would be called to testify. Thus she had no reasonable opportunity to question the witnesses prior to trial. As a result, Reed would have been unfairly prejudiced had the witnesses testified.

Finally, the Court reaffirms its ruling precluding defendants from introducing documentary evidence of witness statements, taken during an internal investigation, regarding the underlying conduct. The Court permitted defendants to introduce that they conducted an investigation and, in summary fashion, what the interviews showed, but precluded them from introducing the interviews themselves or the second-level hearsay contained within them. This ruling was correct as a matter of hearsay law. The employees' statements regarding earlier events were unquestionably out of court statements offered to prove the truth of the matters contained in the statements, and the "business record" exception to the hearsay rule embodied in Federal Rule of Evidence 803(6) did not authorize admission of the statements' contents. *See, e.g., Hook v. Regents of Univ. of California*, 394 Fed. Appx. 522, 531 (10th Cir. 2010); *Essex Ins. Co. v. Fidelity & Guar. Ins. Underwriters, Inc.*, 282 Fed. Appx. 406, 411-12 (6th Cir. 2008).

In addition, because the Court permitted defendants to introduce the names of the persons interviewed and the fact that none of them had indicated that Groves made racist comments or displayed racial animus, defendants were not prejudiced by the exclusion of the interview memoranda.

### Conclusion

For the reasons stated above, the Court denies defendants' motion for judgment as a matter of law or alternatively for a new trial [docket no. 193]. Defendants are directed to respond to plaintiff Reed's petition for attorney's fees and expenses and to her bill of costs by no later than September 13, 2013, and Reed is directed to reply to the response by no later than September 27, 2013. Plaintiffs Golden and Moore are directed to respond by defendants' bill of costs by no later than September 13, 2013, and defendants are directed to reply to the response by no later than September 27, 2013.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 16, 2013