**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DEANO GOLDEN, LATRICE REED,** ) | |
| **PHYLON MOORE, and** ) | |
| **VICTOR HERNANDEZ,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No. 10 C 7673** |
| ) | |
| **WORLD SECURITY AGENCY, INC.,** ) | |
| **WORLD SECURITY BUREAU, INC.,** ) | |
| **GLENDON GROVES,  ABDUL** ) | |
| **KISWANI, and IBRIHIM KISWANI,** ) | |
| ) | |
| **Defendants.** ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Four plaintiffs, Deano Golden, Latrice Reed, Phylon Moore, and Victor

Hernandez, filed suit against World Security Agency, Inc. and World Security Bureau,

Inc. (collectively, WSB), Glendon Groves, Ibrihim Kiswani, and Abdul Kiswani.  In a 57-

page amended complaint filed in September 2011, plaintiffs asserted the following

claims:

- each plaintiff asserted a hostile work environment claim against all

defendants under 42 U.S.C. § 1981 and Title VII (Counts 1, 2, 3, and 4);

- each plaintiff asserted a race discrimination claim against all defendants

under section 1981 and Title VII (Counts 5, 6, 7, and 8);

- Golden and Moore asserted claims of discriminatory constructive

discharge against all defendants under section 1981 and Title VII, including allegations

of retaliation (Counts 9 and 10);

- each plaintiff asserted claims of retaliation against all defendants under section 1981 and Title VII (Counts 11, 12, 13, and 14);

- each plaintiff asserted claims of intentional infliction of emotional distress and negligent infliction of emotional distress against all defendants (Counts 15, 16, 17, 18, 19, 20, 21, and 22);

- each plaintiff asserted claims against WSB and both Kiswanis under the Fair Labor Standards Act and the Illinois Minimum Wage Law (Counts 23 and 24).

At an early stage of the litigation, plaintiffs' counsel were granted leave to withdraw as counsel for Hernandez because he had stopped communicating with them. Not too long after that, Hernandez's claims were dismissed for want of prosecution. The claims against Abdul Kiswani were eventually dismissed on plaintiffs' motion.

Following the completion of discovery, the defendants moved for summary judgment on all claims. The Court granted summary judgment in defendants' favor against Golden and Moore on all of their claims and against Reed on her emotional distress and wage claims. The Court also dismissed Groves from Reed's retaliation claim. *Golden v. World Sec. Agy., Inc.*, Case No. 10 C 7673, 884 F. Supp. 2d 675 (N.D. Ill. 2012). This left for trial Reed's hostile work environment and race discrimination claims against all defendants and her retaliation claim against the defendants other than Groves.

After a trial held in March 2013, a jury found in favor of Reed against WSB and Groves on her claim of a racially hostile work environment but in favor of Kiswani on that claim, and it found in favor of all defendants on Reed's retaliation claim. The jury

awarded Reed $20,000 in compensatory damages against WSB and Groves, $50,000 in punitive damages against WSB, and $5,000 in punitive damages against Groves, a total of $75,000. In August 2013, the Court denied defendants' motions for judgment as a matter of law or for a new trial. *Golden v. World Sec. Bureau, Inc.*, No. 10 C 7673, 2013 WL 4441503 (N.D. Ill. Aug. 16, 2013).

Reed has petitioned for an award of attorney's fees and for costs, and the defendants have petitioned for costs against plaintiffs Golden and Moore. The Court rules on those matters in this decision.

**1.    Reed's fee petition**

Reed seeks a total of $187,568.75 in attorney's fees, broken down as follows:

| ATTORNEY NAME | HOURLY RATE | HOURS | TOTAL |
|---|---|---|---|
| Uche Asonye | $ 425 | 69 | $29,325 |
| Jason Keck (atty) | $ 225 | 461 | $103,725 |
| Jason Keck (law clerk) | $ 125 | 10.5 | $1,312.50 |
| Scott Fanning | $ 275 | 132 | $36,300 |
| Staff | $ 125 | 135.25 | $16,906.25 |
| **TOTAL** | | | $187,568.75 |

In the parties' joint statement submitted to Local Rule 54.3(e), defendant contended that the appropriately recoverable fees amount to approximately $43,000, not including any time awarded for work in responding to defendants' post-trial motions. *See* Pl.'s Mem., Ex. C at 2 (dkt. no. 218-3). Defendants object to the hourly rates as well as to the majority of the attorney and paralegal time sought by Reed.

The starting point for determination of a reasonable attorney's fee is the number

of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party petitioning for fees bears the burden of showing the reasonableness of the time requested as well as the hourly rates. *Id.* at 437.

The figure derived from multiplying the hours reasonably expended by a reasonable hourly rate is referred to as the "lodestar." A court can adjust the lodestar based on twelve factors described in *Hensley*. *Id.* at 434 n. 9. The twelve factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 430 n. 3. "However, 'many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009) (quoting *Hensley*, 461 U.S. at 434 n.9).

### a.      Hourly rates

A reasonable hourly rate is "one that is derived from the market rate for the services rendered." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (internal quotation marks omitted). The focus is "the prevailing market rate for lawyers engaged in the type of litigation in which the fee is being sought." *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996) (emphasis omitted). *See also Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999).

The Court finds reasonable the hourly rates sought by plaintiffs' counsel, with a modest adjustment to the hourly rate claimed for Mr. Fanning. In their response to the fee petition, defendants cited extensively to decisions in this district regarding appropriate hourly rates. *See* Defs.' Mem. at 9 n.4. In particular, defendants relied on this Court's decision in *Wells v. City of Chicago*, 925 F. Supp. 2d 1036 (N.D. Ill. 2012), which concerned a suit under 42 U.S.C. § 1983. In this Court's experience, the hourly rates for lawyers engaged in section 1983 litigation are similar to those engaged in employment discrimination litigation. Defendants cite *Wells* for the proposition that a $325 hourly rate is reasonable for an attorney with 15 to 20 years of experience. That is a literally correct but actually misleading summary of the pertinent discussion in *Wells.* The plaintiff's attorneys in that case were experienced litigators but had next to no experience in section 1983 litigation. The Court thus found it appropriate to discount their rates charged for other types of litigation, finding that their "'work in non-civil rights litigation translates to something less than the equivalent amount of civil rights litigation experience; [an attorney's] learning curve on such cases likely is steeper than it would be for someone with greater experience handling them.'" *Wells*, 925 F. Supp. 2d at 1041 (quoting *Jimenez v. City of Chicago*, No. 09 C 8081, 2012 WL 5512266, at *3 (N.D. Ill. Nov. 14, 2012)).

The same considerations do not apply to the attorneys for Reed, who specialize and are experienced in litigating employment discrimination cases. Mr. Asonye, who has over twenty years of experience in this field, appropriately seeks an hourly rate of $425. For Mr. Fanning, who during the period of most of his work in this case (shortly before and during trial) had about five and one-half years of experience, the Court finds

that the appropriate hourly rate is $250, not $275 as requested.  Defendants do not appear to object to the $225 rate sought by Mr. Keck for his work as an attorney, and the Court agrees that this is an appropriate rate.  *See generally Wells*, 925 F. Supp. 2d at 1042; *Jimenez*, 2012 WL 5512266, at *3 (approving a $250 hourly rate for an attorney with an experience level similar to Fanning and a $225 rate for an attorney with a roughly similar experience level to Keck).  The Court also finds reasonable the $125 per hour claimed for work by paralegals and law clerks.  *See Jimenez*, 2012 WL5512266 , at *5.

### b.    Time

The primary bone of contention is whether and the extent to which the time claimed by Reed's attorneys should be reduced to account for claims on which she did not succeed or claims advanced by the other plaintiffs, who likewise did not succeed. Reed says that her claims were all interrelated with each other and with those of the other defendants and that she has eliminated time that related exclusively to the other defendants' claims.

### i.    Successful / unsuccessful claims

When a plaintiff presents multiple claims for relief based on a common core of facts or related legal theories, there is no legal bar against awarding attorney's fees for time spent on rejected claims.  *See, e.g., Moriarty v. Svec*, 233 F.3d 955, 964 (7th Cir. 2000).  If, however, the claims on which plaintiff has prevailed are distinct from those on which she did not prevail, then attorney's fees attributable to the claims on which the plaintiff did not prevail cannot be awarded.  *Id.  See also Hensley*, 461 U.S. at 435.

- Reed's hostile work environment claim, on which she prevailed,

6

overlapped factually with her state law emotional distress claims, on which she did not prevail, but they did not overlap legally. The only reduction appropriate for these claims involves the time that Reed spent briefing them on summary judgment.

- Reed's wage claims did not overlap factually or legally with her hostile work environment claim. Based on the Court's review, however, not a great deal of litigation time was devoted to these claims. *See Golden*, 884 F. Supp. 2d at 698 (noting that plaintiffs "have done next to nothing to develop their wage claims").

- Reed's retaliation claim, which proceeded to trial, had only a small amount of factual overlap with her hostile work environment claim, but they were not entirely separate. *See* Pl.'s Reply at 5.

- There was only modest factual overlap between Reed's race discrimination claim (and those of the other plaintiffs) and her hostile work environment claim.

- The Court agrees with Reed that no reduction is appropriate based on the claims against the defendants against whom she did not prevail. The evidence regarding the claims against these defendants overlapped entirely with evidence regarding the other defendants.

- The most significant "overlap" issue involves the claims of non-prevailing plaintiffs Golden and Moore. Plaintiff made some reduction in this regard on her own; she represents that "[f]or matters that included work for all three [plaintiffs] at the same time, Plaintiff has only billed 1/3 of the time to Ms. Reed." Pl.'s Mem. at 14. Aside from this, the Court largely agrees with Reed that significant proportions of the depositions of these plaintiffs and the discovery concerning their claims also applied to Reed's claims.

Each of the three plaintiffs claimed to have been subjected to a hostile work environment by Grove, and thus their testimony and other evidence of their treatment by Groves was relevant and probative on Reed's claim as well. The same is true with regard to Reed's contention that management personnel of WSB failed to take appropriate action when complaints were made about Groves's conduct. *See, e.g., Golden*, 2013 WL 4441503, at *2 (taking into account complaints "by Reed *and others*" concerning Groves's conduct.

### ii. Other issues raised by defendants

Defendants have raised a number of other issues regarding plaintiff's claimed attorney time, which the Court addresses in this section.

- <u>EEOC charge and other pre-lawsuit matters</u>. Plaintiff agrees that 0.5 hours of Mr. Asonye's time for reviewing Hernandez's fee agreement should be eliminated but otherwise argues that the time spent on the EEOC charge and other matters for all four plaintiffs should not be reduced because the claims overlapped. As discussed earlier, there was factual overlap among the claims, but each plaintiff filed a separate EEOC charge. *See* 2d Am. Compl. ¶ 61. There was doubtless some time involved in reviewing and working on the charges of the non-prevailing plaintiffs that cannot fairly be considered to relate to Reed's claim. The Court therefore reduces the time requested by two-thirds of the time claimed by Mr. Asonye for the entries for 9/29/10, 10/7/10, 10/8/10, and 10/13/10, a reduction of 3.0 hours. The total reduction is 3.5 hours of Mr. Asonye's time. The Court rejects defendants' contention that the time in this category is otherwise unreasonable or non-compensable.

- <u>Preparation of complaint and amended complaint</u>. The Court has

concluded that there was factual overlap between Reed's claims on which she prevailed and those of the other plaintiffs, but she should not be able to recover attorney time spent drafting the legal claims of the unsuccessful plaintiffs, a discrete task that is not properly attributable to Reed's successful claim. The same is true of Reed's claims on which she did not prevail. The Court reduces by two-thirds the time spent drafting the complaint. This amounts to a reduction of 4.0 hours of Mr. Asonye's time, 11.0 hours of Mr. Keck's time, and 3.25 hours of paralegal time.

- <u>Review of defendants' answers</u>. Defendants object to six hours of attorney time charged for reviewing defendants' answers to the complaint and amended complaint. The Court reduces this by two-thirds for the reasons described above. This amounts to a reduction of 3.0 hours of Mr. Asonye's time and 1.0 hours of Mr. Keck's time.

- <u>Rule 26(a) disclosures and Rule 26(f) conference</u>. The Court is unpersuaded that the claimed attorney time for these tasks should be reduced due to the presence of the unsuccessful plaintiffs and claims, for the reasons described by plaintiff in her reply. *See* Pl.'s Reply at 8.

- <u>Court appearances and related matters</u>. When a prevailing plaintiff like Reed has mixed success, a court assessing the plaintiff's fee petition does not parse the petition on a task-by-task basis and eliminate the time spent on discrete motions, tasks, and arguments on which the plaintiff did not succeed. The only question Is whether the time spent was reasonable. *See, e.g., Jaffee v. Redmond*, 142 F.3d 409, 414 (7th Cir. 1998); *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988). The Court is persuaded that the questioned time in this category was reasonably spent and is

unpersuaded by defendants' contention that Mr. Asonye, who was lead counsel at the time, need not or should not have participated.

- <u>Settlement conference</u>. The Court rejects defendants' contention that the time that Mr. Asonye spent at the settlement conference was unreasonably spent and not compensable. Given the importance of the conference and Mr. Asonye's extensive experience in matters of this sort, it was reasonable for him to attend and to do the necessary preparatory work in advance.

- <u>Review of documents produced by defendants</u>. Plaintiff claims a little over 20 hours of attorney time and 26.5 hours of paralegal time for reviewing documents produced by defendants. Defendants say they produced a significant quantity of documents that concerned claims on which Reed did not prevail—her claims regarding wages, promotion, and discipline. They argue that Reed should not be entitled to recover for attorney time spent reviewing these documents. They also argue that plaintiff seeks to recover for attorney time that amounted to clerical work.

Plaintiff's only argument in response to defendants' contention that this time should be cut is that all of the claims were interrelated, a point the Court has rejected in part. To recap, the Court has determined that the hostile work environment claims of all plaintiffs overlapped but that there was not significant overlap between Reed's hostile work environment claim and her race discrimination and retaliation claims and no overlap with her wage claim. Defendants say that they produced 3,000 documents relating to other plaintiffs the claims on which Reed did not prevail, but they have not said what proportion of their overall document production this represented. That said, plaintiffs' attorneys were required to provide the Court with billing records sufficient to

permit segregation of compensable and non-compensable time. The Court does at least have somewhat of a handle on the documentation that came from defendants that was introduced or referenced at trial. The Court will reduce the fees for review of defendants' documents by one-half, which the Court believes is a reasonable percentage reduction under the circumstances. This amounts to a reduction of 0.25 hours of Mr. Asonye's time, 9.75 hours of Mr. Keck's time, and 13.25 hours of paralegal time.

- Preparation of discovery requests. Plaintiffs claim a little over 25 hours of attorney time and 5.5 hours of paralegal time for preparing discovery requests. Defendants object to time claimed for working on discovery requests relating to plaintiffs other than Reed or to defendants other than WSB and Groves. As a general objection, this lacks merit; as discussed, there was overlap between the hostile work environment claims of the other plaintiffs and Reed's claim, and no reduction is warranted relating to the dismissed defendants due to overlap with the defendants found liable. Some reduction is warranted based on the claims on which Reed did not prevail, and as further described in the discussion regarding the time claimed for plaintiff's review of defendants' discovery responses. The Court makes a fifty percent reduction, which amounts to a reduction of 3.5 hours of Mr. Asonye's time, 9.0 hours of Mr. Keck's time, and 2.75 hours of paralegal time.

- Responding to defendants' discovery requests. Although the factual support for the hostile work environment claims of the unsuccessful plaintiffs overlapped with that for Reed's claims to the extent previously discussed, this does not mean that Reed's counsel should be able to recover the time spent on responding to discovery

11

requests addressed to the unsuccessful plaintiffs.  If they had not been plaintiffs in the litigation but instead had been only witnesses, they would not have been subject to Rules 33 or 34.  The Court makes a fifty percent reduction of the time claimed for this task, a reduction of 5.75 hours for Keck and 1.5 hours for paralegals).

-       <u>Motion practice</u>.  The Court overrules defendants' objection to the time requested for the motion to extend discovery and the motion to continue the trial date.  These were reasonable expenditures of attorney time on the part of a prevailing party and the tasks were reasonably related to the claim on which Reed prevailed.

The Court sustains defendants' objection to time claimed for motions relating to plaintiff Hernandez (entries 36, 173, and 378 on Defs.' Ex. 1)—a reduction of 0.5 hours of Mr. Asonye's time, 0,5 hours of Mr. Keck's time, and 0.5 hours of paralegal time.

The Court overrules the objection to the time claimed for a motion to dismiss defendant Abdul Kiswani.  This was reasonably spent in connection with the claim on which plaintiff Reed prevailed.

The Court sustains the objection to the time spent on a motion to compel records that related only to claims on which Reed did not prevail and did not involve claims that were interrelated with the hostile work environment claim (entries 226 and 232 on Defs.' Ex. 1).  This requires a reduction of 3.0 hours of Mr. Keck's time.

-       <u>Responding to motion for summary judgment</u>.  Defendants object to plaintiff's request for the entirety of the attorney and paralegal time spent responding to defendants' motion for summary judgment and moving for reconsideration of the grant of summary judgment.  They contend that three-fourths of the time concerns claims on which Reed did not prevail.

The Court has reviewed plaintiffs' 30-page summary judgment response.  Half of it concerns the claim on which Reed prevailed (some of the discussion concerns other plaintiffs, but the points all appropriately would have been made even had Reed been the only plaintiff).  Mr. Keck claimed a total of 50.5 hours relating to the summary judgment motion and response (the entries for 2/7/12, 3/5/12, 3/6/12, 3/7/12, 3/8/12, 3/12/12, 3/13/12, 3/14/12, 3/15/12, 3/19/12, 3/20/12, 3/22/12, and 3/29/12), and the Court will reduce this by fifty percent, or 25.25 hours.  Mr. Asonye claimed 3.75 hours (the entries for 4/3/12 and 4/5/12), and the Court will reduce this by 2.0 hours.

Plaintiffs' 4-page surreply only concerns non-overlapping claims on which plaintiffs did not prevail.  None of the time spent on this is properly compensable.  This requires a 7.75 hour reduction of Mr. Keck's time (the entries for 4/27/12, 4/28/12, 5/2/12, and 5/3/12) and a 1.25 hour reduction of Mr. Asonye's time (the entries for 4/27/12 and 4/28/12).

Plaintiffs' motion for reconsideration concerned only plaintiffs Golden and Moore.  None of the time spent on the motion for reconsideration is properly compensable.  This requires a 1.0 hour reduction in Mr. Asonye's time (the entries for 9/14/12 and 9/16/12), but none of Mr. Keck's time, as it appears that plaintiff eliminated those entries on her own.

-    <u>Depositions of plaintiffs and their witnesses</u>.  Defendants object to 20.5 of the 34.5 hours of time spent by plaintiffs' counsel in connection with defendants' depositions of plaintiffs and witnesses they identified, saying the remainder concerned plaintiffs who did not prevail and claims on which Reed did not prevail.  The Court is unpersuaded that a reduction of that magnitude is appropriate.  Defendants do not

contend that any of these witnesses would not have had their depositions taken, and it is likely that the significant majority of their testimony would have been elicited had Reed been the only plaintiff making only a hostile work environment claim. The Court will reduce the attorney time for these depositions by twenty percent, amounting to a 7.0 reduction in Mr. Keck's time.

- Depositions of defendants and their witnesses. Plaintiff's counsel took the depositions of all of the defendants and persons they identified as witnesses, a total of eight depositions. Plaintiff claims 61.25 of attorney time and 2.25 hours of paralegal time to prepare for and take the depositions.

The Court has previously found that there was at least some overlap between Reed's claim on which she prevailed and certain of her other claims as well as the harassment and (to some extent) discrimination claims by the plaintiffs who did not prevail. Each one of the witnesses reasonably would have had to be deposed even if Golden and Moore had not been plaintiffs. This includes Elias Lomeli, for the reasons described in plaintiff's reply. *See* Pl.'s Reply at 11.

In their response, defendants do not challenge the taking of any of these depositions other than that of Lomeli. *See* Defs.' Mem. at 17. Yet take the position that plaintiff was reasonably entitled to charge only 19 hours of attorney time to prepare for and take all eight depositions. That is beyond absurd. It is true that some amount of the depositions related only to non-compensable claims by Reed or other defendants, but the non-overlapping time was minimal. The Court reduces the attorney time charged for these depositions by twenty percent, specifically, a reduction of 12.5 hours of Mr. Keck's time.

-        <u>Office conferences and discussions among counsel</u>.  The Court overrules defendants' objection to 4.5 hours of time for conferences.  The Court is unpersuaded that these are unrelated to the claims on which Reed prevailed or that they amount to excessive or "clerical" work.

-        <u>Summonses and service of defendants, including Groves</u>.  The time spent obtaining summonses and serving the defendants against whom Reed did not prevail concerns interrelated claims and parties and is thus properly compensable.  The Court is also unpersuaded by defendants' contention that because fees for service on Groves were already assessed against him, they are not properly compensable as against WSB.  This work related to the claim on which Reed prevailed, and plaintiff has represented that Groves is unable to satisfy the judgment or cost awards against him.

-        <u>Preparation of protective order</u>.  The time spent by plaintiff's counsel to prepare a protective order was reasonably spent and not excessive.  The fact that defense counsel might have taken less time on this task does not render the time by plaintiff's counsel unreasonable.

-        <u>Motion to quash subpoena to Walmart for Reed's records</u>.  The Court declines to eliminate the time claimed for a motion to quash a subpoena issued by defendant to a former employer of Reed.  Even though the motion was unsuccessful, the time was reasonably spent.

-        <u>Witness investigation and subpoenas</u>.  Plaintiff has persuasively shown that the time challenged by defendants for subpoenaing defendant Groves' time and pay records and contacting potential witnesses was reasonably spent and not excessive.  *See* Pl.'s Mem. at 12-13.

\-      <u>Work previously awarded and paid</u>.  Plaintiff agrees that the requested time should be reduced by 2.75 hours of Mr. Keck's time for which plaintiff was previously awarded and paid attorney's fees.

\-      <u>Discovery disputes</u>.  Defendants object to 22 hours claimed on discovery disputes and says that many of these relate to the disparate treatment claims, on which no plaintiff prevailed.  As the Court has indicated, these claims overlapped only to a modest extent with Reed's hostile work environment claim.  To the extent the discovery disputes concerned the files of other potentially comparable employees, those requests would have involved non-overlapping aspects of the disparate treatment claims. In response, plaintiff says only that the time spent on discovery disputes "should not be reduced due to the factual and legal overlap of her successful claims with the unsuccessful claims."  Pl.'s Reply at 13.  The Court has rejected this contention in part, as previously described.  Thus plaintiffs' response is not particularly helpful.

The time entries that defendants have identified, *see* Defs.' Mem. at 20 (cross-referencing time entry line numbers that are included in the far-right column on Defs.' Ex. 1), are not identifiable as relating to any particular subject of discovery.  Given plaintiff's back-of-the-hand response to defendant's argument, the burden of this uncertainty appropriately falls upon them.  The Court reduces plaintiffs' claim by 1.25 hours of Mr. Asonye's time, 17.0 hours of Mr. Keck's time, and 4.0 hours of paralegal time.

\-      <u>Miscellaneous tasks</u>.  The Court overrules all but one of defendants' objections to certain relatively minimal entries.  With one exception, the time was reasonably necessary and not excessive, with regard to claims and matters factually

interrelated with the claims on which Reed prevailed.  The Court sustains defendants'
objection to 0.5 hours of Mr. Keck's time for obtaining W-2 forms (the entries for 2/3/11
and 2/11/11), as these concerned non-overlapping aspects of Reed's retaliation claim.

- <u>Preparation of pretrial order, trial preparation, and trial</u>.  The Court is
unpersuaded by defendants' objection to the time it took for Mr. Fanning to get up to
speed to try the case.  It was reasonable to have two trial attorneys on the case, and
Mr. Fanning undertook significant tasks during the trial (including opening statements,
witness examinations, and rebuttal arguments).  Mr. Fanning obviously had to prepare,
and the time he spent doing so was not unreasonable.  Because he was going to be
one of the trial attorneys, his appearance at the final pretrial conference was likewise
reasonable and necessary.  The Court acknowledges defendants' argument that there
should be a reduction due to Reed's lack of success as to certain claims and
defendants, but there is no viable basis on which to make a reduction in final pretrial
order, trial, or trial preparation time in this regard.  The Court will take account of this
point later in this decision in dealing with the issue of Reed's allegedly limited success.

The Court is also unpersuaded by defendants' objections to paralegal time on the
ground that it involved "clerical" tasks.  A good deal of paralegal work is borderline
clerical, depending on one's definition of what amounts to clerical work.  The particular
tasks involved here do not fall on the non-compensable side of the line.

- <u>Preparation of time reports for fee petition</u>.  The Court is persuaded by
plaintiffs' contention that the attorney time claimed for this task was reasonably
necessary to cull out entries that related exclusively to the claims of the non-prevailing
plaintiffs and that the paralegal time was reasonably necessary to compile the

necessary materials.

-       The Court has considered defendants' remaining arguments to the extent they are not addressed with particularity and has determined them to be without merit.

### iii.    Revised lodestar

The Court has reduced Mr. Fanning's hourly rate and has reduced the time claimed by 20.25 hours for Mr. Asonye, 112.75 hours for Mr. Keck, and 24.75 hours for paralegals.  The revised lodestar is $147,312.50, calculated as follows:

| ATTORNEY NAME | HOURLY RATE | HOURS | TOTAL |
| --- | --- | --- | --- |
| Uche Asonye | $ 425 | 48.75 | $20,718.75 |
| Jason Keck (atty) | $ 225 | 348.75 | $78,468.75 |
| Jason Keck (law clerk) | $ 125 | 10.5 | $1,312.50 |
| Scott Fanning | $ 250 | 132 | $33,000 |
| Staff | $ 125 | 110.5 | $13,812.50 |
| **TOTAL** | | | $147,312.50 |

### c.    Adjustment of lodestar

The Court has considered the factors cited in *Hensley* that a court may take into account in determining whether to adjust the lodestar figure upward or downward. Virtually all of these are not at issue, either because they are not argued or because they have been taken into account in determining the appropriate hourly rate or the time reasonably expended.

Defendants argue that a further downward adjustment of forty percent is appropriate due to what they characterize as Reed's allegedly limited success as compared with her original claims.  *See* Defs.' Mem. at 22 ("From what began as a

multitude of claims and allegations, Reed prevailed on one.").  A court can reduce the lodestar amount when "a plaintiff has achieved only partial or limited success." *Hensley*, 461 U.S. at 436.  In this regard, the Court "assess[es] the results obtained" by Reed and measures the extent of her success "by comparing the results obtained from the lawsuit with the relief [she] sought."  *In re Burlington Northern, Inc. Employment Practices Litig.*, 832 F.2d 430, 435 (7th Cir. 1987).

To the extent that defendants contend that attorney time claimed by Reed relates to non-overlapping claims on which she lost, non-overlapping aspects of claims on which she lost, or non-overlapping claims of other plaintiffs, the Court has already taken this into account in making an approximate twenty-one percent reduction in the lodestar figure ($40,000 of the $187,000 sought by Reed).  In this situation, when considering a further limited-success reduction, a court must take care to avoid what amounts to a double reduction based on the same factors already taken into account, which is inappropriate.  *See generally Nanetti v. Univ. of Ill. at Chi.*, 944 F.2d 1416, 1420-21 (7th Cir. 1991).

The only additional factor not already taken into account that might warrant a further reduction results from the fact that Reed obtained significantly less than she sought at trial.  During closing argument, her attorney asked the jury to award $500,000, but the jury awarded only a very modest amount, $20,000.  The comparison between what plaintiff sought and what she received suggests limited success.  On the other hand, Reed points out that in August 2012, after summary judgment was denied, she offered to settle her claims, including attorney's fees and costs, for $170,000, defendants offered only a pittance, $5,500.  This arguably suggests some reasonable

degree of success at trial, given the amount of attorney time that Reed's counsel presumably had put into the case at the time of the settlement conference.

The Court concludes that given the disparity between plaintiff's assessment of her recoverable compensatory and punitive damages as expressed by her counsel to the jury and the amount the jury actually awarded to her, she achieved a somewhat limited degree of success at trial. That said, her success was not so limited as to warrant the forty percent additional reduction sought by defendants. The Court concludes that a twenty percent limited success reduction is warranted. The resulting fee award is $117,850.

**2.      Reed's bill of costs**

Reed had petitioned for costs pursuant to Federal Rule of Civil Procedure 54(b) and 28 U.S.C. § 1920, in the amount of $9,351. The breakdown is as follows: $350 for the filing fee; $778 for the cost of serving summonses and subpoenas; $4,385 for transcript fees; $3,744 for copying costs; and another $94 for unspecified expenses.

Defendants challenge the amounts paid for (1) serving Ibrihim and Abdul Kiswani with summonses and (2) serving former plaintiff Hernandez with a deposition subpoena; (3) the costs of serving Groves; (4) shipping and overnight mail delivery costs; (5) the court reporter fees for the Lomeli deposition; (6) a portion of the court reporter attendance fees for seven other depositions; and (7) the amount charged for photocopying. *See* Defs.' Resp. at 22-23.

The Court rules as follows. (1) The cost of serving the Kiswanis are recoverable given the interrelationship of the claims against these defendants with the claim on which Reed prevailed. (2) Hernandez would not cooperate with plaintiffs' attorneys—

that is why they were given leave to withdraw from representing him—and thus he reasonably had to be served with a subpoena to attend his deposition. (3) The Court has previously overruled defendants' objection relating to the service of Groves and does so again in the present context. (4) The delivery charges are not described or supported in a way that would indicate they are properly recoverable under section 1920, so the Court denies recovery of those costs. The total of the charges for Day-N-Nite delivery service and FedEx is $187.59. (5) The costs associated with the Lomeli deposition are recoverable, as the Court has previously determined that the deposition was reasonably necessary for Reed in connection with the claim on which she prevailed. (6) The Court agrees with defendants regarding the court reporter attendance charges and makes the $700 reduction that defendants request. (7) Finally, the photocopying charges for the EEOC files for the non-prevailing plaintiffs, the only particular photocopying charge identified by defendants as a non-recoverable cost, are appropriately recovered due to the interrelationship of those plaintiffs' hostile work environment claims with Reed's claim. The Court also overrules defendants' excessiveness objection to the photocopying charges. "[T]the losing party bears the burden of an affirmative showing that taxed costs are not appropriate," *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005), and defendants' generalized excessiveness objection does not come close to carrying this burden.

For these reasons, the Court reduces the costs that Reed seeks by $887.59 and taxes costs in her favor and against defendants WSB and Groves in the amount of $8,463.41.

3.    **Defendants' bill of costs**

Defendants seek to recover costs against Moore and Golden, against whom defendants prevailed.  The Court sustains plaintiffs' objection to defendants' request. The costs were incurred in litigation that Moore and Golden prosecuted jointly with Reed.  Defendants would have incurred the exact same costs had Reed, who prevailed against them, been the only plaintiff; there is no basis for a contrary finding.  Defendants are essentially asking the Court to provide them a basis to shift their own liability for costs to Moore and Golden.  The Court finds an award of costs inappropriate under the circumstances.  *See generally Edwards v. Rogowski*, No. 06 C 3110, 2009 WL 742871, at *10 (N.D. Ill. Mar. 18, 2009); *see also Gilfand v. Planey*, No. 07 C 2566, 2012 WL 5845530, at *6 (citing *Edwards* with approval in declining to award costs to a particular defendant who prevailed in a case in which the plaintiff prevailed against certain other defendants).

## Conclusion

For the reasons stated above, the Court grants plaintiff Latrice Reed's motion for attorney's fees and costs and awards her attorney's fees of $117,850 and costs in the amount of $8,463.41 against defendants World Security Agency, Inc. / World Security Bureau, Inc. and Glendon Groves, jointly and severally.  The Court overrules defendants' petition for costs against plaintiffs Deano Golden and Phylon Moore.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  January 6, 2014